**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Thomas Edward SISK, Charles Benson, Jr., Charles Frederick "Fred" Taylor, and William Aubrey Thompson, Defendants–Appellants.**

**No. 79–5369.**

United States Court of Appeals, Sixth Circuit.

Argued April 18, 1980.

Decided Sept. 18, 1980.

Rehearing Denied Oct. 7, 1980.

Cecil D. Branstetter, Robert H. Schwartz, Nashville, Tenn., John F. Dugger, Morristown, Tenn., Robert J. Shockey, Chattanooga, Tenn., for defendants–appellants.

Hal D. Hardin, U. S. Atty., Joe B. Brown, William Cohen, Asst. U. S. Attys., Nashville, Tenn., for plaintiff–appellee.

Before LIVELY and MARTIN, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

This case comes before us as the last link in an improbable chain of events. Two questions are presented: first, whether there was "manifest necessity" for the district court's *sua sponte* declaration of a mistrial, so that retrial of appellants was not barred by the Double Jeopardy Clause of the Fifth Amendment; second, whether a government entity can be an "enterprise" within the scope of the "Racketeer Influenced and Corrupt Organizations" ["RICO"] chapter of the Organized Crime Control Act.[1] We hold that the facts of this case demonstrate the "manifest necessity" of the district court's declaration of mistrial; there was therefore no error in the district court's denial of appellants' motion to dismiss the indictment on double jeopardy grounds. We do not reach the second question, for we lack jurisdiction to consider it.

I

Each of the appellants in this case was in some way connected with the government of the State of Tennessee. Appellant Sisk was legal counsel to the governor; appellant Benson was an extradition officer working under Sisk; appellant Taylor, a Tennessee highway patrolman, was part of the governor's security staff; appellant

---

1. Section 1962(c) of the codified Act provides that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. 18 U.S.C. § 1962(c) (1976).

Thompson was a Democratic Party committeeman in Hamilton County, Tennessee. These four were charged with violating, and conspiring to violate, RICO by using their political influence to "sell" commutations of sentences and immunity from extradition.

After a suppression hearing and the usual flurry of motions, appellants' trial commenced on July 19, 1979 before Judge Charles G. Neese. On August 10, having suffered a heart attack, Judge Neese certified that due to his illness he was no longer able to preside at appellants' trial. Pursuant to Rule 25(a), Fed.R.Crim.P.[2] Circuit Judge Gilbert S. Merritt, Jr., was designated to continue the trial, presiding in Judge Neese's stead. On September 4, having questioned each juror to determine whether any juror bias had arisen in the course of the eventful and highly publicized prior proceedings, Judge Merritt explicitly found "manifest necessity" to declare a mistrial. He did so, citing three separate grounds. The first was the four–week break in the trial following Judge Neese's initial illness; Judge Merritt concluded after questioning the jurors that their recall of the evidence presented had diminished. Second was the publicity during the trial break concerning a purported jury–tampering attempt, in which appellant Sisk had allegedly been called by a person offering to secure for him a "friend" on the jury in exchange for $25,000. Third was Judge Merritt's conviction that Judge Neese had erroneously instructed the jury on the existence of a conspiracy among appellants–a preliminary finding which triggered application of the coconspirators' exception to the hearsay rule. These three sources of possible juror prejudice led Judge Merritt to conclude that the parties could not have received a fair trial before that jury; he therefore believed

it was necessary to declare a mistrial, and that retrial of appellants consequently would not be barred by the Fifth Amendment.

## II

All of the defendants below objected to the trial court's declaration of mistrial.[3] Thus this ruling, while it precluded all possibility of convictions which might have been upset on appeal, also prevented the appellants from exercising their "valued right to have [their] trial completed by a particular tribunal. . . . " *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). *Accord, Illinois v. Somerville*, 410 U.S. 458, 466, 93 S.Ct. 1066, 1071, 35 L.Ed.2d 425 (1973); *United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 556–557, 27 L.Ed.2d 543 (1971) (plurality opinion of Harlan, J.). This "valued right . . . must in some cases be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter, supra*, 336 U.S. at 689, 69 S.Ct. at 837.

We must decide whether in the present case this "valued right" was properly so subordinated. There are no judicial per se rules for striking the balance of these personal and public interests; each case must turn on its facts. *See United States v. Jorn, supra*, 400 U.S. at 480, 91 S.Ct. at 554–555 (opinion of Harlan, J.); *Downum v. United States*, 372 U.S. 734, 737, 83 S.Ct. 1033, 1035, 10 L.Ed.2d 100 (1963); *Wade v. Hunter, supra*, 336 U.S. at 691, 69 S.Ct. at 838; *United States v. Perez*, 22 U.S. 256, 256 (9 Wheat. 579, 580) (1824). *See also* Holleman, *Mistrials and the Double Jeopardy Clause*, 14 Ga.L.Rev. 45, 78 (1979).

---

**2.** The Rule provides that:

   If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying that he has familiarized himself with the record of the trial, may proceed with and finish the trial.

**3.** Appellant Sisk had moved for a mistrial and had apparently been joined in that motion by appellant Thompson. Sisk withdrew his motion later in the trial. The government, for its part, declared that, while a mistrial might properly be declared, it was ready and willing to proceed before the first jury empaneled.

Justice Story described a balance tilted towards the public's interest as one of "manifest necessity" for declaring a mistrial:

> We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.

*Perez, supra*, 22 U.S. at 256 (9 Wheat. at 580).

"Manifest necessity" has become a term of art. It is a descriptive phrase which has acquired its own connotations; it cannot be read literally, for rarely will it be "necessary," in any everyday sense, for a trial judge to declare a mistrial. *See Arizona v. Washington*, 434 U.S. 497, 506, 98 S.Ct. 824, 830–831, 54 L.Ed.2d 717 (1978). The necessity spoken of reflects a trial judge's estimate of the fairness to both sides of continuing a trial. Normally, courts will accord great deference to this estimate:

> [Trial judges] are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office.

*Perez, supra*, 22 U.S. at 256 (9 Wheat. at 580).

But here, as in all cases, discretion does not equal license; the Fifth Amendment's guarantee against double jeopardy would be a sham if trial judges' declarations of "necessary" mistrials were in fact to go unreviewed.

The Supreme Court has repeatedly tried to develop rules defining the reach of the Double Jeopardy Clause following a declaration of mistrial over a defendant's objection. *Gori v. United States*, 367 U.S. 364, 369, 81 S.Ct. 1523, 1527, 6 L.Ed.2d 901 (1961) implies that *sua sponte* declarations of mistrials will not bar subsequent retrials, "where it clearly appears that a mistrial has been granted in the sole interest of the defendant . . . ." *But see id.* at 370, 81 S.Ct. at 1527 (Douglas, J., dissenting).

██ "Sole interest of the defendant" is a concept that defies definition; in *Arizona v. Washington, supra*, the Court attempted to provide sharper guidelines for the review of mistrial declarations. There is, according to the Court, a "spectrum of trial problems which may warrant a mistrial and which vary in their amenability to appellate scrutiny . . . ."[4] *Id.* 434 U.S. at 510, 98 S.Ct. at 833. At one end of this spectrum are those cases in which the basis for the mistrial is the unavailability of critical prosecution evidence, or in which the state's superior resources are possibly being used to harass a defendant with successive trials. At this end of the spectrum, the "strictest scrutiny" is appropriate when a second prosecution is attempted. *Id.* at 508–09, 98 S.Ct. at 831–832.

The other extreme is the case of the "classic" mistrial–declared when the trial judge believes the jury is unable to agree on a verdict. It is a commonplace in our legal system that a trial judge may discharge a genuinely deadlocked jury and require defendants to stand trial again. Because it is the trial judge who has heard and observed the jurors in such cases, appellate courts should and do normally defer to

---

**4.** The Court added in a footnote an obvious point that "if the trial judge acts for reasons completely unrelated to the trial problem which purports to be the basis for the mistrial ruling, close appellate scrutiny is appropriate." 434 U.S. at 510 n. 28, 98 S.Ct. at 833 n. 28. This is not a case of such judicial action.

a trial judge's determination that a jury cannot reach a fair verdict.

■ The present case lies in the latitudes between these poles. This case, like *Washington*,[5] resulted in a mistrial below because the trial judge wished to avoid submitting a case to biased jurors. Ordinarily a trial judge's estimate of juror prejudice is accorded "the highest degree of respect." *Washington, supra,* 434 U.S. at 511, 98 S.Ct. at 833. But a mistrial is not "manifestly necessary" simply because the trial judge thinks juror prejudice has arisen; on appeal, the source of that prejudice must also be considered in deciding whether retrial of defendants is permissible under the Fifth Amendment.

■ When it is a trial judge's uninvited error which gives rise to juror prejudice, the judge may not discharge the jury and subject defendants to a second trial. A contrary rule would enable judges to perfect trial records in an attempt to ensure "irreversible" convictions when they so desired. Such a rule would also allow trial courts total freedom, through the purposeful commission of error, to harass defendants with multiple trials. Therefore Judge Merritt's conviction that his predecessor at appellants' trial had erroneously instructed the jury may not enter into our calculation of the necessity for Judge Merritt's declaration of mistrial.

In *Illinois v. Somerville,* 410 U.S. 458, 464, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973), the Court, per Justice Rehnquist, stated that "[a] trial judge properly exercises this discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed due to an obvious procedural error in the trial." This language is not in conflict with a rule holding that a judge's own error does not give rise to manifest necessity for a mistrial declared over defendants' objections.

■ The "procedural" error in *Somerville* was a defect in the indictment—a defect which was discovered before any evidence had been presented. The defect was corrected and a new trial begun. The other examples of "obvious procedural errors" given by the Court in *Somerville* were a defendant's failure to make a proper plea[6] and empanelment on the petit jury of a person who had served on the grand jury which had indicted defendant.[7] A trial judge's supposedly improper instruction to the jury on the import of certain evidence is clearly not an "obvious procedural error" in the sense that these are; the errors cited in *Somerville* went to the validity *ab initio* of the first proceedings against the defendants. The errors were procedural in the sense that they destroyed the integrity of the legal process that we call a trial. Judge Neese's supposed error was not of that sort.

■ As we read it, Rule 25(a), F.R. Crim.P.,[8] permits the continuation under a substitute judge of a criminal trial that had been disrupted by the original judge's disability. It does not authorize the successor judge to sit in appellate review of his predecessor's actions. It is, therefore, irrelevant to appellants' double jeopardy claim that Judge Merritt did not himself commit the error which he pointed to in declaring a mistrial. The error may have been more manifest to Judge Merritt than to his predecessor as presiding judge, but that would not create necessity for a mistrial where no such necessity existed before.

Judge Neese's challenged interim jury instruction may not enter into the determination of the manifest necessity for a declaration of mistrial below. Judge Merritt listed two other grounds for the declaration: the

---

5. *Washington* dealt with a mistrial declared because of repeated improprieties by defense counsel during opening argument.

6. *Lovato v. New Mexico,* 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244 (1916). The defendant in *Lovato* had demurred to the indictment and his demurrer was overruled. A jury was empaneled before the defendant had ever been arraigned for pleading.

7. *Thompson v. United States,* 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894).

8. *See* note 2 *supra.*

effect of the four–week delay occasioned by Judge Neese's illness, and the publicity surrounding a purported jury–tampering attempt during that delay. Judge Merritt did not find the delay itself determinative of the necessity of discharging the jury; more significant were the possibly prejudicial reports that reach several members of the jury while they were not under any judge's supervisory authority.

We have already noted that a trial judge's determination concerning potential juror prejudice is given the highest respect by appellate courts. The trial court's examination of the jurors showed that at least four jurors had been asked or teased about the attempt, well reported in the media, of an anonymous caller to provide one of appellants a "friend" on the jury.[9] While each of these jurors expressed confidence in his or her ability to weigh the evidence fairly, Judge Merritt understandably feared that these jurors might be inclined to vote for conviction in order to prove their honesty.

The necessity of discharging the jury is most manifest "when it is made to appear to the court that, . . . by reason of outside influences brought to bear on the jury pending the trial, the jurors or any of them are subject to such bias or prejudice as not to stand impartial between the government and the accused." *Simmons v. United States*, 142 U.S. 148, 154, 12 S.Ct. 171, 172, 35 L.Ed. 968 (1891). In the present case, outside influences brought to bear pending resumption of the trial made it appear to the trial court that such prejudice had arisen; under these circumstances, retrial of the appellants is not barred by the Double Jeopardy Clause of the Fifth Amendment.

### III

Appellants' second contention is that their actions were not within the purview of RICO, and that the trial court conse-

quently erred in denying appellants' motions to dismiss the indictment against them. We have no jurisdiction to consider the propriety of the denial of these pretrial motions.

It is axiomatic that this Court's jurisdiction is defined by statute. *See, e. g., Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977). The statute applicable here is 28 U.S.C. § 1291 (1976), which grants this Court "jurisdiction of appeals from all *final* decisions of the district courts of the United States . . . ." (emphasis added). A pretrial order denying a defendant's motion to dismiss an indictment is not normally an appealable "final decision" under this section. *E. g., United States v. MacDonald*, 435 U.S. 850, 853–54, 98 S.Ct. 1547, 1549, 56 L.Ed.2d 18 (1978) (barred pretrial appeal of denial of motion to dismiss indictment on Sixth Amendment grounds); *Hoffa v. Gray*, 323 F.2d 178, 179 (6th Cir.), *cert. denied*, 375 U.S. 907, 84 S.Ct. 199, 11 L.Ed.2d 147 (1963).

The Supreme Court has held, however, that § 1291 does not limit appellate jurisdiction to review of "those final judgments which terminate an action . . . ." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). Under *Cohen*, an order on a pretrial motion is immediately reviewable if (*inter alia*) the trial court's decision involved rights which would be "lost, probably irreparably [,]" if review were deferred until after trial. *Id.* at 546, 69 S.Ct. at 1225–1226.

A defendant's right not to be twice put in jeopardy for the same offense would be lost irreparably if the right could only be raised following conviction at a second trial. Therefore denial of a pretrial motion to dismiss an indictment on double jeopardy grounds is considered "final," and hence immediately reviewable in the Court of Appeals. *Abney, supra*, 431 U.S. at 659.

---

**9.** Judge Merritt excused one juror for reasons unrelated to jury tampering publicity; at the time of his mistrial ruling, he was considering excusing at least two others. This would have left only three alternate jurors at a trial that was expected to continue at least three more weeks.

Appellants argue that their attack on RICO's application is "part and parcel" of their double jeopardy claim and should now be considered by this Court. *Abney* forbids this; this Court does not have ancillary appellate jurisdiction to consider otherwise nonappealable questions which are raised simultaneously with double jeopardy claims. A contrary rule would encourage defendants' assertions of frivolous double jeopardy claims in circumvention of the finality requirement of § 1291. *Abney, supra*, 431 U.S. at 662–63, 97 S.Ct. at 2041–2042.

The rationale for the final judgment rule—the prevention of piecemeal litigation and attendant delays—is especially cogent in criminal cases. *MacDonald, supra*, 435 U.S. at 854, 98 S.Ct. at 1549; *Di Bella v. United States*, 369 U.S. 121, 126, 82 S.Ct. 654, 657–658, 7 L.Ed.2d 614 (1962). For this reason we do not believe that the district court's denial of appellants' motions to dismiss the indictment for failure to state an offense under RICO could itself be considered appealable under any exception to the final judgment rule. Appellants' motions do raise a purely legal question of statutory construction which is as well within our range of competence as within the district court's. It is therefore tempting to consider this question, for if it is answered as appellants urge, this litigation would be ended. In the long run, however, the right of criminal defendants to be speedily tried would be impaired if we were to adopt the practice of rendering, following interlocutory appeals, what would in effect be advisory opinions on the construction of penal statutes. This is one of those difficult cases in which to serve the purposes of the final judgment rule, this Court must maintain the rule even though its individual applications require us to look beyond the plight of individual litigants. *Cf. MacDonald, supra*, 435 U.S. at 850, 98 S.Ct. at 1553 ("Allowing an exception to the rule against pretrial appeals in criminal cases for speedy trial claims would threaten precisely the values manifested in the Speedy Trial Clause.").

Finally, it is irrelevant to any question of this Court's jurisdiction that both appellants and appellees have requested our interpretation of RICO. The parties to litigation cannot create appellate jurisdiction where none exists. *United States v. Florian*, 312 U.S. 656, 61 S.Ct. 713, 85 L.Ed. 1105 (1941) (per curiam), *reversing* 114 F.2d 990, 993 (7th Cir. 1940); *Clark v. Taylor*, 163 F.2d 940, 942–43 (2d Cir. 1947).

IV

The district court's denial of appellants' motions to dismiss the indictment on double jeopardy grounds is affirmed. Lacking jurisdiction to consider it, we express no opinion on the district court's refusal to dismiss the indictment for failure to state an offense under RICO.

No costs are taxed. Each party shall bear its own costs on appeal.