Elhannon JONES, Jr.,
Petitioner-Appellant,

v.

F. Byrd HOGG, Special Judge, Perry
Circuit Court, Hazard, Kentucky,
Respondent-Appellee.

No. 83–5529.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 6, 1983.

Decided April 12, 1984.

William M. Scalf, Carolyn Geisler, argued, Lexington, Ky., for petitioner-appellant.

James M. Ringo, Asst. Atty. Gen., argued, Frankfort, Ky., for respondent-appellee.

Before MARTIN and KRUPANSKY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Elhannon Jones, Jr. appeals the denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254.

Jones has been prosecuted three times by the Commonwealth of Kentucky for the offense of murder, KRS 507.020(1)(a). Each trial ended in a hung jury. After each trial, a mistrial was declared. Each of the three trials was presided over by a different trial judge and prosecuted by a different Commonwealth attorney. Each trial appears to have lasted only one day. The record reveals little else, making an informed decision as to what influenced the declaration of each mistrial very difficult.

When a fourth trial date was set, Jones moved to dismiss the indictment, and for relief from the Kentucky Court of Appeals. His motion to dismiss was denied, as well as his request for appellate relief. The decision was upheld by the Kentucky Supreme Court. *Jones v. Hogg*, Ky., 639 S.W.2d 543 (1982).

After exhausting his remedies in the state courts, Jones sought a writ of habeas corpus in the district court claiming that a fourth prosecution was barred by the double jeopardy clause of the fifth amendment. In concluding that a fourth prosecution was not barred by the Constitution, the district court stated that "since the jury was unable to reach a unanimous verdict in this case, it was within the [trial] court's discretion to discharge the jury and declare a mistrial." Furthermore, because Jones had failed to allege any bad faith conduct by the trial judge or prosecutor, or show an abuse of discretion in the mistrial declaration and setting the case for a fourth trial, the district court held that "any allegation that [Jones'] Fifth Amendment rights have been violated is without merit."

On appeal, Jones contends that the double jeopardy clause prohibits the state from prosecuting him a fourth time. Because we find the record below wholly inadequate to render a proper disposition on the constitutional claims raised in Jones' petition, we reverse the district court's order denying Jones' petition for a writ of habeas corpus.

■ The Constitution directs that no person shall be twice put in jeopardy of life or limb for the same offense. *U.S. Const. Amend. V.* This was made applicable to the states in *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). The double jeopardy clause, however, is not an absolute bar to retrial in every case. A defendant may be retried where a "manifest necessity" exists to declare a mistrial in his initial prosecution. A deadlocked jury is a classic example of manifest necessity. *United States v. Perez*, 22 U.S. (9 Wheat) 579, 580, 6 L.Ed. 165 (1824); *Arizona v. Washington*, 434 U.S. 497, 505–506, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978); *United States v. Sanford*, 429 U.S. 14, 16, 97 S.Ct. 20, 21, 50 L.Ed.2d 17 (1976) (per curiam); *United States v. Brown*, 677 F.2d 26, 27 (6th Cir.1982); *United States v. Sisk*, 629 F.2d 1174, 1178 (6th Cir.1980).

■ At the same time however, the Supreme Court has recognized that the fifth amendment's prohibition against placing a defendant twice in jeopardy reflects a constitutional policy of finality for the defendant's benefit in all criminal proceedings, and is "fundamental to the American scheme of justice." *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971) (plurality opinion); *Benton v. Maryland, supra*, 395 U.S. at 796, 89 S.Ct. at 2063. As stated in *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957);

The underlying idea, one that is deeply ingrained in the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green*, 355 U.S. at 187–188, 78 S.Ct. at 223. *See also Jorn*, 400 U.S. at 479, 91 S.Ct. at

554. The Court has stated that the Double Jeopardy Clause grants a defendant a "valued right to have his trial completed by a particular tribunal." *Jorn*, 400 U.S. at 484, 91 S.Ct. at 556, quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); *see also Arizona v. Washington, supra*, 434 U.S. at 503, n. 11, 98 S.Ct. at 829, n. 11. A state is not free to engage in oppressive practices which subject an accused to repeated prosecutions in an attempt to gain a criminal conviction. *See Swisher v. Brady*, 438 U.S. 204, 215–216, 98 S.Ct. 2699, 2706, 57 L.Ed.2d 705 (1978); *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976). A contrary rule would violate the notions of fair play and substantial justice associated with our constitutional criminal justice system, *State v. Witt*, 572 S.W.2d 913, 917 (Tenn.1978), and greatly increase the risk that innocent individuals will be found guilty, *Carsey v. United States*, 392 F.2d 810, 813–814 (D.C.Cir. 1967).

Ultimately, as is the case here, courts are left with a crucial question: When is a retrial of a defendant prohibited by the fifth amendment because earlier prosecutions have been terminated before a jury verdict has been reached? In answering this question the courts have correctly avoided drawing any per se rules in balancing the competing interests. *Arizona v. Washington, supra*, 434 U.S. at 506–507, 98 S.Ct. at 830–31; *Illinois v. Somerville*, 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973); *Sisk, supra*, 629 F.2d at 1177. Instead, the courts have recognized that each claim must be analyzed according to the facts of the particular case. *Whitfield v. Warden of Maryland House of Correction*, 486 F.2d 1118, 1121–22 (4th Cir.1973), *cert. denied*, 419 U.S. 876, 95 S.Ct. 139, 42 L.Ed.2d 116 (1974); *State v. Williams*, 51 N.C.App. 613, 277 S.E.2d 546, 549 (1981). But the courts have not been without direction on this point. In *United States v. Perez, supra*, Justice Story set forth the standard for determining when a retrial of a defendant is permissible

after a mistrial, where there is no consent of the accused.

We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

*Perez*, 22 U.S. (9 Wheat) at 580. The *Perez* court held a defendant could be retried even after the trial judge had, without the consent of the defendant, discharged the jury because of its inability to reach a verdict. The manifest necessity test of *Perez* has been consistently followed. *Arizona v. Washington, supra; Jorn, supra; United States v. Sanford, supra; Wade v. Hunter, supra; Keerl v. Montana*, 213 U.S. 135, 137, 29 S.Ct. 469, 470, 53 L.Ed. 734 (1909); *Hamm v. Jabe*, 706 F.2d 765, 767 (6th Cir.1983). Manifest necessity does not mean absolute necessity, but rather a "high degree" of necessity before a mistrial can be properly invoked. *Arizona v. Washington*, 434 U.S. at 506, 98 S.Ct. at 831.

However, the trial court's power to exercise discretion is not without limits. "[D]iscretion does not equal license; the Fifth Amendment's guarantee against double jeopardy would be a sham if trial judges' declarations of 'necessary' mistrials were

in fact to go unreviewed." *Sisk*, 629 F.2d at 1178. The Supreme Court has further stated that "the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's [valued right to have his trial completed by a particular tribunal] until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *Jorn*, 400 U.S. at 485, 91 S.Ct. at 557; *Cherry v. Director, State Bd. of Corrections*, 635 F.2d 414, 418 (5th Cir.1981); *id.* at 422 (concurring opinion). Well aware of the important constitutional interests at stake, several circuits have required that trial courts permit the accused an opportunity to oppose a mistrial order and consider all possible alternatives before declaring a mistrial. *Harris v. Young*, 607 F.2d 1081, 1085 (4th Cir.1979); *United States v. MacQueen*, 596 F.2d 76, 82–83 (2d Cir.1979); *United States v. Pierce*, 593 F.2d 415, 417 (1st Cir.1979); *United States v. Sanders*, 591 F.2d 1293, 1299 (9th Cir.1979); *United States v. McKoy*, 591 F.2d 218, 222 (3d Cir.1979); *United States v. Starling*, 571 F.2d 934, 941 (5th Cir.1978).[1]

■ In determining whether sound discretion has been exercised, several factors must be considered. These factors include: (1) a timely objection by the defendant; (2) the jury's collective opinion that it cannot agree on a verdict; (3) the length of the jury deliberations; (4) the length of the trial; (5) the complexity of the issues presented to the jury; (6) any proper communication which the judge has with the jury; (7) the effects of possible exhaustion and the impact which coercion of further deliberations might have on the verdict; and (8) the trial judge's belief that additional prosecutions will result in continued

hung juries. *Rogers v. United States*, 609 F.2d 1315, 1317 (9th Cir.1979); *State v. Aillon*, 182 Conn. 124, 438 A.2d 30, 35 n. 7 (1980) (and cases cited therein); *State v. Witt, supra*, 572 S.W.2d at 917.

Unfortunately the present petition does not have an adequate record for us to determine which of these factors, if any, were considered before a fourth trial was scheduled for Jones.

■ One major reason for reaching this conclusion is that the Kentucky Supreme Court misapplied the *Perez* rule in Jones' application for a writ of prohibition. In denying Jones' application, it stated that in applying the *Perez* rule of manifest necessity

we must determine whether, under all of the circumstances, there is a manifest necessity for invoking the defense of double jeopardy. We have not found such circumstances to exist. Had such circumstances been manifest, then, and in that event, such a defense could have properly been brought to the attention of the [Kentucky] Court of Appeals in a proceeding such as the present action.

*Jones v. Hogg, supra*, Ky. 639 S.W.2d at 544–45. This interpretation of the *Perez* rule clashes with our reading of the decision. *Perez* requires an evaluation of the propriety of a mistrial declaration, made without the defendants' consent, by taking into account all of the circumstances indicating a manifest necessity for the mistrial declaration. It does not require that a defendant show a "manifest necessity for invoking the defense of double jeopardy." *Jones v. Hogg, supra*, Ky. 639 S.W.2d at 544–45. On the contrary, the trial court must decide that manifest necessity exists to support a mistrial declaration. *Arizona v. Washington*, 434 U.S. at 509, 98 S.Ct. at 832; *Jorn*, 400 U.S. at 485–86, 91 S.Ct. at

---

1. We recognize, of course, that trial judges are not required to make express findings of "manifest necessity" before issuing a mistrial order; nor is a trial judge required to explain his mistrial ruling. *Arizona v. Washington*, 434 U.S. at 516–517, 98 S.Ct. at 835–36. Nevertheless, the test articulated in *Perez* compels a determination on whether sound discretion was exercised

in granting the mistrial. We agree with the Fourth Circuit when it states that "[i]f obvious and adequate alternatives to aborting the trial were disregarded, this suggests the trial judge acted unjustifiably. Therefore, we must examine the alternatives to a mistrial." *Harris v. Young, supra*, 607 F.2d at 1085, n. 4.

557; *Downum v. United States*, 372 U.S. 734, 735–36, 83 S.Ct. 1033, 1033–34, 10 L.Ed.2d 100 (1963); *United States v. Castellanos*, 478 F.2d 749, 751 (2d Cir.1973) ("[T]he essential question in each case involving double jeopardy contentions after the declaration of a mistrial has been whether the *trial judge* abused his discretion in terminating the trial short of verdict.") (emphasis added). Requiring a defendant to show a "manifest necessity for invoking the defense of double jeopardy," *Jones v. Hogg, supra,* places upon the accused a burden that should be carried by the court.

■ In this record there is no evidence indicating why the trial judges in each of Jones' prosecutions decided a mistrial was necessary. We do not know whether Jones was given an adequate opportunity to contest the mistrial order or whether the trial judge considered all possible alternatives before declaring a mistrial. Jones apparently did not object to the mistrial declarations. The record on appeal, however, is silent on this point. Even assuming that Jones did not object, we find the record insufficiently developed to evaluate the actions taken below. More specifically, we cannot determine the substantiality of defense counsel's alleged "non-objection" to the mistrial declarations. Consent to a mistrial order should only be implied where the circumstances positively indicate a defendant's willingness to acquiesce in the order. *Cf. Raslich v. Bannon*, 273 F.2d 420 (6th Cir.1959); *United States v. Goldstein*, 479 F.2d 1061, 1067 (2d Cir.), *cert. denied*, 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973). We find no such acquiescence in this record. Whether counsel for Jones was afforded an adequate opportunity to be heard on the question of mistrial is also missing from the record. *United States v. Pierce*, 593 F.2d 415, 419 (1st Cir.1979). In a case of this magnitude, a murder prosecution, we believe the record should disclose some indication of the reasons, if any, which were relied upon by the trial judges in declaring the mistrials. We cannot determine from this record whether there was a "scrupulous exercise of judicial discretion" which led the trial judges in each of Jones' three prior trials to believe that the "ends of public justice would not be served by a continuation of the proceedings." We have no way of knowing that the "trial judge [took] care to assure himself that the situation warrant[ed] action on his part foreclosing [Jones] from a potentially favorable judgment by the tribunal." *Jorn*, 400 U.S. at 485–86, 91 S.Ct. at 557.

Finally, the record "reflects a total lack of awareness of the double jeopardy consequences of the [trial court's] action and of the manifest necessity standard." *United States v. Starling, supra,* 571 F.2d at 941. Jones has thrice been denied his "valued right to have his trial completed by a particular tribunal." *Arizona v. Washington*, 434 U.S. at 503, 98 S.Ct. at 829; *Jorn*, 400 U.S. at 484, 91 S.Ct. at 556. As noted in *Arizona v. Washington*, an accused is exposed to several hazards when subjected to multiple prosecutions. Not only must he incur additional financial burdens, but he is also burdened with the emotional stress associated with an unresolved accusation of wrongdoing. *Arizona v. Washington*, 434 U.S. at 503–504, 98 S.Ct. at 829. The record here fails to reflect even the slightest hint that the trial judges were cognizant of these constitutional interests. *See Green v. United States, supra,* 355 U.S. at 187–88, 78 S.Ct. at 223; *Preston v. Blackledge*, 332 F.Supp. 681, 685–88 (E.D.N.C. 1971). The local Commonwealth Attorney now seeks to prosecute Jones for a fourth time. We have no indication why the earlier prosecutions ended in hung juries. Repeated attempts to convict an individual "may tilt a doubtful case toward conviction," and enhance the possibility that an innocent man may be found guilty. *Carsey v. United States, supra,* 392 F.2d at 814 (concurring opinion). "At some point such pursuit must end." *Iowa v. White*, 209 N.W.2d 15, 16 (Iowa 1973).

This case presents a rather unusual set of circumstances. Three trials, three judges, three Commonwealth Attorneys, no conviction. Although the actions of trial judges in these matters are normally ac-

corded great deference, in this case we have no record upon which our decision can rest. This is not a case where Jones has requested that we ignore established legal precedent, *see U.S. v. Brown, supra,* 677 F.2d at 27, nor is this a case where we presume a constitutional violation has occurred below, *see Townsend v. Sain,* 372 U.S. 293, 314–15, 83 S.Ct. 745, 757–58, 9 L.Ed.2d 770 (1963). Rather, we merely hold that the record before us precludes our finding that sound discretion was exercised in accordance with constitutional principles when the mistrials were declared in Jones' prior three prosecutions.

Accordingly, the district court order denying Jones' petition for a writ of habeas corpus is reversed and the case is remanded for further proceedings consistent with this opinion.