820 F.2d 1225
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James H. LYONS, Petitioner-Appellant,
v.
Honorable James W. JACKSON, Common Pleas Court, Lake County,
Ohio, Respondent-Appellee.
 No. 86-3962.
 United States Court of Appeals, Sixth Circuit.
 June 19, 1987.
 
 Before GUY and BOGGS, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Lyons appeals from the denial of his petition for a writ of habeas corpus. The sole issue presented by Lyons' habeas petition concerned whether the double jeopardy provisions of the Constitution were implicated as a result of a mistrial declared in a criminal proceeding in which he was a defendant. The mistrial was the result of a hung jury in a state criminal prosecution. The district court concluded that the granting of the mistrial in the state court was appropriate and denied the writ. We agree and affirm.
 
 I.
 
 2
 Lyons was tried in the Common Pleas Court of Lake County, Ohio, for involuntary manslaughter. The prosecution involved two counts. Each count embodied a different theory. The prosecution claimed in the first count that the death of the victim was the proximate result of Lyons's felonious assault on a third party. The second count claimed that the victim's death occurred as a result of Lyons "menacing" the third party rather than feloniously assaulting him. The first count was an Ohio first degree felony and the second count was a felony of the third degree.
 
 
 3
 The relevant events at trial were described by the magistrate below as follows:
 
 
 4
 Trial commenced June 4, 1984, a Monday, and continued to Thursday afternoon. The jury deliberated approximately one hour that afternoon, then was dismissed for the day and returned Friday morning.
 
 
 5
 Late Friday afternoon the court inquired, through the bailiff, of the status of the deliberations. The jury responded they had reached a verdict on Count I but could not agree on Count II. The provisional verdict on Count I was never reduced to writing.
 
 
 6
 After consulting with the parties the court gave further jury instructions, specifically, a modified Allen charge, which stressed they should attempt to decide the entire case and should continue deliberating as long as there was a possibility of reaching a verdict.
 
 
 7
 The jury deliberated at least another hour thereafter. The court then decided, with petitioner's agreement, but over the prosecutor's objection, to send the jury home for the weekend.
 
 
 8
 The jury resumed deliberations Monday morning and continued until just before noon. They then sent the court a note stating: "We can't agree on either account (sic)." The court had an in-chambers meeting with counsel where the following discussion occurred:
 
 
 9
 THE COURT: Let the record reflect that after, in this Court's records, 13 and a half hours over three days, the Jury has indicated to the Court, the question for the Court, which will be attached and made a part of the record as an exhibit, they cannot come to an agreement.
 
 
 10
 Counsel have agreed in this consideration with the Court, is that correct, Mr. Purola, that they are hung at this point?
 
 
 11
 MR. PUROLA: Attaching no particular significances (sic) to this, I concur.
 
 
 12
 MR. HAWKINS: Yes, sir.
 
 
 13
 The jury was called into open court where the following colloquy transpired:
 
 
 14
 THE COURT: Mr. Ness, you have advised the Court that you are not able to reach an agreement on either count?
 
 
 15
 THE FOREMAN: Yes, sir.
 
 
 16
 THE COURT: Ladies and gentlemen, you have considered this case for a considerable length of time and reported to the Court that you are unable to reach a verdict.
 
 
 17
 The Court accepts this conclusion and the foreman of the Jury agrees.
 
 
 18
 The Prosecutor will present an entry on their finding.
 
 
 19
 Members of the Jury, you are now excused. You may leave.
 
 
 20
 App. 13-15.
 
 II.
 
 21
 The Constitution directs that no person shall be twice put in jeopardy of life or limb for the same offense. However, as we stated in Jones v. Hogg, 732 F.2d 53 (6th Cir.1984):
 
 
 22
 The double jeopardy clause is not an absolute bar to retrial in every case. A defendant may be retried where a "manifest necessity" exists to declare a mistrial in his initial prosecution. A deadlocked jury is a classic example of manifest necessity.
 
 
 23
 Id. at 54 (citations omitted). The courts have uniformly held that "the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial." Arizona v. Washington, 434 U.S. 497, 509 (1978).
 
 
 24
 Thus, in the purest sense, our inquiry is whether there was a genuinely deadlocked jury here. In terms of habeas review, however, this inquiry translates into answering the question as to whether the trial judge failed to exercise the "sound discretion" entrusted to him. 434 U.S. at 510 n. 28. In reviewing this exercise of "sound discretion" we do so against the command of Arizona v. Washington that "[t]he trial judge's decision to declare a mistrial when he considers the jury deadlocked is ... accorded great deference by a reviewing court." Id. at 510.
 
 
 25
 We are also guided in this inquiry by our decision in Hogg where the court stated:
 
 
 26
 In determining whether sound discretion has been exercised, several factors must be considered. These factors include: (1) a timely objection by the defendant; (2) the jury's collective opinion that it cannot agree on a verdict; (3) the length of the jury deliberations; (4) the length of the trial; (5) the complexity of the issues presented to the jury; (6) any proper communication the judge has with the jury; (7) the effects of possible exhaustion and the impact which coercion of further deliberations might have on the verdict; and (8) the trial judge's belief that additional prosecutions will result in continued hung juries.
 
 
 27
 Hogg, 732 F.2d at 56. Although the Hogg guidelines are helpful, they are illustrative rather than all inclusive. Additionally, the particular facts of each individual case must be considered and will dictate which of the Hogg factors, if any, should be accorded greater weight.
 
 
 28
 Applying the Hogg guidelines, we find the following facts support the conclusion that the trial judge properly exercised his discretion: (1) this was only a three and one-half day trial; (2) the issues were not complex; (3) the jury deliberated for thirteen and one-half hours over a three-day period; (4) the jury had been given a modified Allen charge; (5) petitioner did not object to the Allen charge; (6) petitioner's counsel agreed with the court that the jury was hung.
 
 
 29
 Although the court accepted the foreperson's assurance that the jury was hung and did not individually question each juror, this procedure is acceptable under these facts. United States v. Larry, 536 F.2d 1149, 1153 (6th Cir.1976), cert. denied, 429 U.S. 984 (1976).
 
 
 30
 The fact that the jury had been given a modified Allen charge is also of particular significance. We agree with the magistrate's observations on this issue:
 
 
 31
 The judge gave a modified Allen charge on Friday. The jury was instructed in part:
 
 
 32
 If you decide that you cannot agree and that further deliberations will serve no useful purpose, you may ask to be returned to the courtroom and report that fact to the Court. If there is a possibility of reaching a verdict, you should continue your deliberations.
 
 
 33
 The clear import of these instructions was to inform the jury not to return to court without a verdict unless it was hopelessly deadlocked. Thus when the jury did return on Monday without a verdict and told the court it could not agree on either count, detailed inquiry was not necessary. The inquiry on Monday was similar to that in other cases following a previous Allen charge which found no double jeopardy violation. Rogers v. United States, 609 F.2d 1315 (9th Cir.1979); Henderson v. Wright, 533 F.Supp. 1373 (D.Me.1982).
 
 
 34
 App. 19.
 
 
 35
 Finally, we also attach significance to the fact that there is nothing in the record to indicate that the trial judge was motivated to declare a mistrial for reasons other than the interests of justice. This distinguishes the instant case from cases such as United States v. Gordy, 526 F.2d 631 (5th Cir.1976), where the appeals court concluded that the declaration of a mistrial after a jury had deliberated only five and one-half hours was motivated at least in part by the trial judge's desire to not miss his airplane flight home.
 
 
 36
 The life of a trial judge is not an easy one. If a jury is held after they indicate an inability to reach a verdict, the judge is accused of being "coercive." If the judge dismisses the jury and grants a mistrial, the trial judge is then faced with acquittal motions based on double jeopardy. Notwithstanding this dilemma, there is no doubt that an experienced trial judge has the best vantage point to determine whether further jury deliberations would be appropriate. Although with hindsight there is always more that could have been done, we find here that the judge's declaration of a mistrial was an appropriate response to the jury's conclusion that they could not agree.
 
 
 37
 AFFIRMED.