John GLOVER, Petitioner–Appellee,

v.

Norris W. McMACKIN, Warden,
Respondent–Appellant.

No. 91–3392.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 26, 1991.

Decided Nov. 22, 1991.

Marla L. Mitchell, argued, briefed, Akron, Ohio, for petitioner-appellee.

Donald G. Keyser, Asst. Atty. Gen., argued, briefed, Office of the Atty. Gen. of

Ohio, Columbus, Ohio, for respondent-appellant.

Before KENNEDY and NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Respondent Norris W. McMackin, Warden of the Marion Correctional Institution in Marion, Ohio, at which petitioner is currently serving his sentence, appeals the judgment granting the petitioner a Writ of Habeas Corpus under 28 U.S.C. § 2254. We agree with the District Court that on the record before it the Writ should be granted. However, we believe that Ohio's motion for an evidentiary hearing to supplement the record of the state proceeding should have been granted and shall remand for that purpose.

I.

On April 10, 1985, petitioner John Glover was indicted by the Clermont, Ohio grand jury on three counts of rape. He was alleged to have sexually abused his stepdaughter over the course of several years. The first jury trial commenced on September 4, 1985. The victim was the first witness to testify. On cross-examination, petitioner's defense counsel attempted to establish that the victim had fabricated the rape allegations in an effort to divert attention from her own recently discovered misconduct. During the course of the cross-examination, the prosecution objected eleven times to questions of defense counsel. Four of the objections were on the basis of the questions having been asked and answered. Several of the objections were raised without a stated basis, several were hearsay objections, and the final objection alleged that the defense counsel was badgering the witness. Several of the objections were sustained, but several were overruled. In addition, the court had occasion to conduct four bench conferences off the record. At least two of these appear to have been evidentiary in nature, and the rulings favored the petitioner.

After the cross-examination had proceeded a short time, the trial judge conducted a bench conference, at the request of the prosecution, to address the applicability of the hearsay exclusion to testimony the defense sought to introduce. At the conclusion of the conference, the court allowed defense counsel to proceed with his line of questioning. The defense then elicited testimony from the witness as to certain topics that were discussed in a conversation she had had with her brother concerning the discovery of her alleged misconduct. Defense counsel then inquired about specific statements the witness had made in the conversation, and the witness responded that she could not remember. The following exchange then took place:

Q. What did you tell your brother?

A. Uhm—

Q. Do you remember?

A. I don't remember.

Q. Did you talk about the marijuana and pills that were found?

MR. FERENC (prosecuting attorney): Objection, again.

THE COURT: Objection is sustained, she said she couldn't remember.

Q. Do you remember no part of the conversation, or part of it?

MR. FERENC: Asked and answered, what's he going to do, ask her a hundred times.

THE COURT: Sustained.

Q. After you talked to your brother, the conversation you don't remember anything about, you went and talked to your mother; is that correct?

MR. FERENC: Objection [defense counsel] is trying to badger the witness.

DEFENSE COUNSEL: I'm not badgering anybody.

THE COURT: Gentlemen, this is a mistrial, I will not put up with this kind of conduct, please get your vouchers and you are dismissed for the day. Thank you.

After dismissing the jury, the trial court continued: "I only want to say that we are going to try this case again, and it is going to be heard by me, and I want both of you

to act like attorneys should, including you Mr. Zugelter (the defense counsel)."

Retrial was scheduled for December 10, 1985. The day before the retrial, petitioner filed a motion to dismiss on the grounds that double jeopardy barred the second trial. The motion was apparently heard and overruled. There is no record of any arguments or any statement or opinion by the trial judge. Petitioner was then convicted of all three counts of rape. Petitioner appealed his conviction to the Twelfth District Court of Appeals for the State of Ohio, raising five assignments of error. The Court of Appeals found the double jeopardy claim "well-taken," and ordered the judgment be reversed and petitioner discharged. The Court of Appeals held that petitioner had not waived or forfeited his Fifth Amendment protections through the failure of defense counsel to timely object to the mistrial, and that retrial was barred by double jeopardy. It stated:

> Here, there was no manifest necessity for a mistrial, but, instead, only a desire on the part of the trial court to protect the prosecuting witness from an intense and aggressive, yet lawful, cross-examination. We cannot conclude on the basis of the first trial transcript before us that there was a high degree of necessity for terminating the first trial.

*State v. Glover,* Clermont County No. CA 85–12–106 at 8, unreported 1986 WL 14968 (December 29, 1986).

The State appealed, and the Ohio Supreme Court reversed the decision of the Court of Appeals on the double jeopardy claim and remanded for consideration of petitioner's other four assignments of error. *State v. Glover,* 35 Ohio St.3d 18, 517 N.E.2d 900 (1988). The Ohio Supreme Court attached great significance to the visceral circumstances of the trial courtroom, including the demeanor of counsel and the reactions of the witness and the jurors. Inasmuch as a written transcript does not reflect those factors, the court felt that it could not assume, as the Court of Appeals did, that the trial court was motivated by a desire to protect the witness. The court therefore refused to find reversible error where it could not discern the

particular reasons or analysis underlying the trial court's mistrial order. On remand, the Court of Appeals then upheld petitioner's conviction, rejecting his other assignments of error. Petitioner again appealed to the State Supreme Court, which dismissed his appeal without opinion.

On May 16, 1990, petitioner filed his petition for a Writ of Habeas Corpus in the United States District Court for the Northern District of Ohio. On September 18, 1990, the magistrate filed his Report and Recommendation recommending that the Writ be granted on the basis of the Fifth Amendment double jeopardy claim. After the parties filed their responses, the District Court adopted the magistrate's Report and Recommendation and granted the Writ of Habeas Corpus, but stayed issuance pending this appeal by the State.

## II.

The Constitution directs that no person shall be twice put in jeopardy of life or limb for the same offense. *U.S. Const. amend. V.* This prohibition bars double jeopardy by state prosecutions as well as federal. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The general rule that a prosecutor is entitled to one and only one trial to make the state's case is viewed more flexibly in the circumstance where the first trial was aborted without the consent of the defendant before a verdict is reached. *United States v. Dinitz,* 424 U.S. 600, 607–08, 96 S.Ct. 1075, 1079–80, 47 L.Ed.2d 267 (1975). In view of the importance of the constitutional right, however, retrial in such circumstances is permissible only if the prosecution can justify the mistrial order as required by "manifest necessity." *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978).

Our first consideration, therefore, concerns whether the petitioner may be found to have consented to the directing of the mistrial. In light of the drastic consequences attached to a finding of consent, we reject respondent's position that the failure of the petitioner to object on the

record constitutes consent. Consent should not be assessed by the mechanical application of an absolute rule, but rather by an analysis informed by the weighty considerations inherent in criminal jeopardy. *See Arizona v. Washington,* 434 U.S. at 503–04, 98 S.Ct. at 829–30 (accused is exposed to severe hazards when subjected to multiple prosecutions, including not only additional financial burden, but also emotional stress associated with an unresolved accusation of wrongdoing). For these reasons, consent should be implied "only where the circumstances positively indicate a defendant's willingness to acquiesce in the [mistrial] order." *Jones v. Hogg,* 732 F.2d 53, 57 (6th Cir.1984).

Nothing in the record before us indicates a willingness of petitioner to acquiesce in the mistrial order. Although he did fail timely to object, it is apparent that such an objection would have been difficult, and probably futile. At no point before the actual declaration of the mistrial was it even mentioned on the record as a potential course of action by the court. The summary nature of the trial court's actions, a swift declaration followed by the immediate dismissal of the jury and adjournment of the court, rendered an objection both unlikely and meaningless. *See United States v. Jorn,* 400 U.S. 470, 487, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971) ("[I]ndeed, the trial judge acted so abruptly in discharging the jury that, had the prosecutor been disposed to suggest a continuance, or the defendant to object to the discharge of the jury, there would have been no opportunity to do so."). We decline to deem such an omission to constitute consent to a mistrial.

### III.

#### A.

■ The test under the Fifth Amendment for whether a retrial is barred when the initial trial is aborted before judgment is necessarily a flexible one. The deeply ingrained value of finality in criminal proceedings must be weighed against the interests of the state in just results, with special consideration given to the inherent difficulties and complexities of criminal prosecution. *Id.* at 479–80, 91 S.Ct. at 554. ("[A] criminal trial is, even in the best of circumstances, a complicated affair to manage.... [It is] readily apparent that a mechanical rule prohibiting retrial whenever circumstances compel the discharge of the jury without the defendant's consent would be too high a price to pay for the added assurance of personal security and freedom from governmental harassment."); *Illinois v. Somerville,* 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973) (proper analysis "abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations that arise during the course of a criminal trial.").

■ This analysis is not without guidance, however, for the classic formulation first enunciated by Mr. Justice Story in *United States v. Perez,* 22 U.S. (9 Wheat) 579, 580, 6 L.Ed. 165 (1824), mandates that there have been a "manifest necessity" for the mistrial. This term of art, "manifest necessity," has come to mean not absolute necessity, but rather a "high degree" of necessity. The trial court must be given broad latitude to exercise its considered judgment in assessing the specific facts and circumstances attendant on each case. As originally stated by Justice Story:

> We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.

*Perez,* 22 U.S. (9 Wheat) at 580.

The trial court's discretion is not absolute, however. The personal and constitu-

tional importance to a defendant to be "able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate," *Washington*, 434 U.S. at 514, 98 S.Ct. at 835, (quoting *Jorn*, 400 U.S. at 486, 91 S.Ct. at 557–58), cannot be gainsaid. In order to ensure that this interest is adequately protected, "reviewing courts have an obligation to satisfy themselves that, in the words of Mr. Justice Story, the trial judge exercised 'sound discretion' in declaring a mistrial." *Washington*, 434 U.S. at 514, 98 S.Ct. at 835.

The particular circumstances of *Washington* illustrate the nature of the scrupulous discretion that is required. The case involved a mistrial declared after defense counsel attempted to introduce in the second trial evidence of the misconduct by the prosecution in the first trial. The Arizona Supreme Court had ordered the second trial because the prosecution had withheld exculpatory evidence. In the second trial, the defense made explicit reference to the circumstances of the retrial in its opening statement. The prosecution objected and requested a mistrial. The trial court heard arguments on the matter, but postponed a decision to afford the defense an opportunity to produce authority allowing such references. The court explicitly noted the serious considerations attendant upon a mistrial order, and consciously proceeded in a cautious fashion so as to avoid or minimize their consequences. After subsequent research and argument on the matter, the judge ultimately granted the mistrial.

The Supreme Court upheld the mistrial order, taking pains to note that "the trial judge did not act precipitately," but rather, "evincing a concern for the possible double jeopardy consequences of an erroneous ruling, he gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial." *Washington*, 434 U.S. at 515–16, 98 S.Ct. at 835. It is that degree of careful consideration and solicitude for the serious consequences attendant upon mistrials that is required for a court to shoulder its *Perez* burden of "sound discretion."

■ We recognize that a trial court is not constitutionally required to make an explicit finding of "manifest necessity," nor to establish on the record the full extent of its carefully considered basis for the mistrial. *Washington*, 434 U.S. at 516–17, 98 S.Ct. at 835–36. The exercise of discretion stands on much firmer ground, however, when it is apparent on the face of the record the reasons for a particular decision, and the analytic process leading to that conclusion. The *Washington* Court expressly noted that an explicit, on the record analysis and evaluation of manifest necessity was not *sine qua non* "since the record provides sufficient justification for the state court-ruling." *Id.* (emphasis added); *see also id.* at 525, 98 S.Ct. at 840 (Marshall, J., dissenting) ("Where the need for a mistrial is not 'plain and obvious,' . . . [a] requirement of some statement on the record addressed to the need for a mistrial would ensure that appropriate consideration is given to the efficacy of other alternatives and that mistrial decisions are not based upon improper, or only partly adequate, criteria. Of particular relevance here, moreover, it would facilitate proper appellate and habeas review, avoiding the need to speculate on the basis for the decision to terminate the trial.").

### B.

On the record before us, we find neither manifest necessity nor sound discretion. The mistrial was declared shortly into the cross examination of the victim. The defense was quite legitimately attempting to attack the credibility of the witness by establishing a motive for the allegations, namely the discovery of her own misconduct. The exact nature of the questions asked were well within the bounds of relevant, admissible material. The prosecutor lodged a total of eleven objections, including several based on hearsay exclusions, and four on the basis that the questions had been asked and answered. Several of the objections had even been overruled.

■ Although we do not doubt that the parties may have become quite agitated, a

"virtual shouting match among counsel and the bench," as alleged by the respondent, is in itself insufficient to merit a mistrial. Testifying in rape cases is inherently traumatic and unpleasant. Although we do not doubt that the experience may have been particularly traumatic and unpleasant for this victim, we cannot find in the record the sort of repeated misconduct or abusive questioning that would require a mistrial to protect the witness. Hostile, even shouted, questioning can be controlled without aborting the trial. Other mechanisms are available to protect the witness and control the courtroom, including granting a recess or continuance, or threatening or imposing contempt sanctions. At least some effort of this sort is required before we can find the sort of necessity needed to meet the *Perez* standard. This is particularly true where the trial court seems not to have considered these alternatives, or weighed their consequences against the vital concerns of not being twice placed in jeopardy. *See Jones v. Hogg,* 732 F.2d 53, 56 n. 1 (6th Cir.1984), quoting *Harris v. Young,* 607 F.2d 1081, 1085 n. 4 (4th Cir.1979) ("If obvious and adequate alternatives to aborting the trial were disregarded, this suggests the trial court acted unjustifiably."), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980).

The respondent now asserts, and the Ohio Supreme Court hypothesized, that the trial court might have been acting out of extreme solicitude for the petitioner, rather than for the witness. It is in precisely this sort of reconstruction of matters wholly and exclusively within the purview of the trial judge that would most benefit from an analysis on the record of that judge's findings and reasoning. Although we acknowledge that the trial court is in a unique position to evaluate matters such as jury demeanor and possible prejudice or bias against a defendant, the record before us does not provide an adequate basis for such a finding.

■ Further, we note that the Ohio Supreme Court applied an erroneous standard in placing the burden on petitioner to show the absence of manifest necessity. That court's ruling turned on its conjecture that the trial court may have been motivated to protect the petitioner from juror prejudice arising from the inflammatory and confrontational cross-examination strategy. The court held that, inasmuch as a potentially satisfactory justification could be hypothesized, double jeopardy did not bar retrial. 35 Ohio St.3d at 20, 517 N.E.2d 900. ("It is not clear from the record that the trial court's motivation was to protect the witness-victim. It could be said with equal credence that the judge was concerned that the aggressive tactics of defense counsel were prejudicing the jury *against appellee.*"). The Ohio Supreme Court's analysis appears to place the burden on the petitioner to establish that manifest necessity did not exist. This is incorrect. The burden is on the prosecution to establish that manifest necessity did exist. *Washington,* 434 U.S. at 505, 98 S.Ct. at 830. The fact that the record fails to foreclose all possible justifications for a mistrial is not sufficient to outweigh the important interests secured by the federal constitution.

■ The State has requested an evidentiary hearing to establish a more substantial basis from which to evaluate whether the trial court exercised sound discretion and properly found manifest necessity. The State seeks, at a minimum, an inquiry into the substance of the off-the-record conferences conducted by the trial court. Even if it is unlikely that these conferences can satisfy the *Perez* standard, our respect for concerns of comity mandate that we provide the State an opportunity to establish the manifest necessity required by the Fifth Amendment. This is especially so in a case such as this, where the record is wholly inadequate to informed appellate review, and to substantiate an exercise of sound discretion.

■ Petitioner contends that the State has waived its interest in a full evidentiary inquiry, by virtue of its failure to request an evidentiary hearing in its return of the Writ to the District Court below. In light of the Ohio Supreme Court holding that the record was adequate to find manifest necessity, and the State's request for an ex-

pansion of the record in its Objection to the Magistrate's Report, we decline to hold that the State has waived its interest in an expansion of the record. We therefore RE-MAND this case to the District Court to provide the State an opportunity to expand the evidentiary record to support its contention that manifest necessity did in fact exist for the declaration of the mistrial. If the State is unable to add anything to the record before us, we agree with the District Court that the Writ should issue.

LIVELY, Senior Circuit Judge, dissenting.

Respectfully, I dissent. There is nothing in this record to justify giving the state an opportunity to attempt, at this late date, to establish manifest necessity for the trial judge's mistrial order. The record reflects no reason for that order other than the trial judge's frustration over the way in which the attorneys, particularly defense counsel, were conducting the trial. One thing is clear—the defendant had been put in jeopardy. As the majority concedes, the questioning by the defense attorney that apparently triggered the mistrial order was perfectly legitimate cross-examination. Yet, for totally unexplained reasons, the trial court aborted the trial without, so far as the record shows, even considering less drastic alternatives.

One reading the majority opinion easily might assume that the final word would be AFFIRMED rather than REMAND. The majority finds that on the record the writ should be granted. The majority finds that the petitioner did not consent—in fact had no opportunity to consent—to the mistrial. The majority specifically concludes that there was neither manifest necessity for a mistrial nor the exercise of sound discretion by the trial court. The majority further finds that the record does not support the Ohio Supreme Court's hypothesis that the trial court acted out of extreme solicitude for the petitioner rather than to protect the witness. The majority also holds that the Ohio Supreme Court erroneously placed the burden on the petitioner to establish that manifest necessity did not exist. Yet, despite all these deficiencies, the majority concludes that the state is entitled to another bite at the apple.

Any effort to reconstruct, at this late date, the off-the-record conferences conducted by the trial court will produce nothing but an unsupported swearing contest. The respondent failed to demonstrate either in its brief or at oral argument any likelihood that further evidentiary proceedings will produce any new information about the reason for the trial court's decision to order a mistrial. Before this court vacates a district court judgment in order to permit one party to supplement a record as bare as this one, the court should require the party seeking a remand to identify some available source of the information being sought. This the respondent was unable to do.

The petitioner was charged with a very serious offense and should not be required to run the gauntlet of further court proceedings because the trial judge acted in total disregard of well-established principles that control the granting of mistrials in criminal prosecutions. Justice Story wrote in *Perez* that the power to abort a criminal proceeding after jeopardy has attached "ought to be used with the greatest caution, under urgent circumstances, *and for very plain and obvious causes.*" 22 U.S. (9 Wheat.) at 580 (emphasis added).

The trial court in this case did not declare a mistrial for "very plain and obvious causes." Two Ohio appellate courts disagreed as to the cause, and the majority finds that the record does not support either hypothesis. Further speculation is not justified, and I believe the Double Jeopardy Clause prohibits what will in effect be a nunc pro tunc reconstruction of a totally deficient record in order to find causes that clearly are not "very plain and obvious."

I would affirm the district court order granting the writ of habeas corpus.