UNITED STATES of America,
Plaintiff,

v.

**Robert Lewis SPEARS, Defendant.**

No. 1:99–CR–19.

United States District Court,
W.D. Michigan,
Southern Division.

March 8, 2000.

and two counts of making false claims against the United States, in violation of 18 U.S.C. § 287. Trial was initially commenced before the Honorable Richard A. Enslen, Chief Judge of this Court, on September 13, 1999. After several days of trial, Judge Enslen declared a mistrial based on "manifest necessity," finding that defense counsel's performance had been so deficient as to deny defendant effective assistance of counsel, resulting in jury bias against defendant. The case was reassigned to the undersigned for a new trial. Now before the Court is defendant's motion to dismiss, coupled with an alternative request that the matter be certified for interlocutory appeal should defendant's motion be denied.

Defendant moves the Court to dismiss the renewed prosecution because a second trial would violate his constitutional guarantee against double jeopardy, being twice tried for the same offense. Defendant contends Judge Enslen declared a mistrial based on a personality conflict with defense counsel and the erroneous finding that the jury had been tainted. Defendant contends the circumstances prerequisite to declaration of a mistrial sua sponte were not present.

The Court has reviewed the motion and trial record at length and concludes, for the reasons that follow, that defendant's motion to dismiss must be denied.

## I

■ The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb ..." U.S. Const. amend. V. "Once jeopardy attaches, prosecution of a defendant before a jury other than the original jury, excluding any contemporaneously empaneled and sworn alternates, is barred unless 1) there is 'manifest necessity' for a mistrial or 2) the defendant either requests or consents to a mistrial." *Watkins v. Kassulke*, 90 F.3d 138, 141 (6th Cir.1996).

Julie Ann Woods, Assistant United States Attorney, Grand Rapids, MI, for plaintiff.

Robert R. Elsey, Grosse Point park, MI, for defendant.

## OPINION OF THE COURT

McKEAGUE, District Judge.

This case presents a five-count indictment, charging defendant Robert L. Spears with three counts of income tax evasion, in violation of 26 U.S.C. § 7201,

■ Here, mistrial was declared based on "manifest necessity," as neither the government nor defendant requested or consented to a mistrial. The doctrine of manifest necessity was established in *United States v. Perez*, 22 U.S. (9 Wheat) 579, 6 L.Ed. 165 (1824), where the court held that a judge may declare a mistrial and discharge a jury when, "taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Id.* at 580. This tool should only be used "with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Id.* "Necessity" cannot be interpreted literally, however. *Arizona v. Washington*, 434 U.S. 497, 506, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). There are degrees of necessity. A court must find a "high degree" of necessity before concluding that a mistrial is appropriate. *Id.* at 506, 98 S.Ct. 824.

■ Where, as here, manifest necessity is found to reside in the possibility of juror bias, the trial judge's assessment is entitled to "great deference." *Id.* at 514, 98 S.Ct. 824. The trial court's discretion is not absolute, however; the reviewing court must satisfy itself that the trial judge exercised sound discretion in declaring a mistrial. *Id.*

## II

Evaluation of Judge Enslen's exercise of discretion requires consideration of the totality of the circumstances, spanning several days of trial. The declaration of mistrial was not precipitated by a single discrete error or incident of misconduct. It was triggered by the cumulative effect of numerous irregularities and continuing difficulties.

These difficulties emerged first in the opening statement of defense counsel Robert R. Elsey on Tuesday, September 14, 1999. Even though opening statements were limited to 30 minutes by the Court, defendant's opening statement was interrupted by numerous objections by Assistant United States Attorney Julie Ann Woods, most of which were sustained. The objections necessitated three excusals of the jury, during which Judge Enslen repeatedly attempted to educate Mr. Elsey on the proper scope of an opening statement, and after which the Court was constrained to give cautionary instructions to the jury. During the third excusal, Judge Enslen first made reference to concerns about defendant's right to effective assistance of counsel.

These initial encounters appear to have set the tone for subsequent proceedings—an antagonistic tone. From the beginning, it is evident that Judge Enslen's repeated admonitions of Elsey were not in the nature of mere constructive guidance offered to inexperienced trial counsel, but were necessitated by counsel's stubborn resistance to the judge's instructions and rulings.[1] Elsey's motives are a matter of speculation, but there can be no doubt that his repeated disregard of the court's rulings and admonitions were deliberate, and not the function of innocent ignorance.

In the morning of September 15th, Judge Enslen became aware that defendant Spears, due to a hearing impairment, had not been able to hear all of the proceedings during the first two days of trial. Shocked and distressed to first learn of defendant's hearing problem on the third day of trial, Judge Enslen broached the possibility of a mistrial. When neither defendant nor the government favored the idea, Judge Enslen adjourned the trial for two days to allow defendant to obtain satisfactory hearing equipment.

During the ensuing discussion, outside the presence of the jury, relating in part to Elsey's competence and defendant Spears' satisfaction with Elsey's representation, Judge Enslen admonished Elsey about unnecessary and annoying yelling, histrion-

---

**1.** In fact, Mr. Elsey made it clear that he has practiced law for some 20 years. Tr. 9/21/99, p. 149.

ics, arm-waving and repetitiveness. Elsey, in turn, asked Judge Enslen not to reprove and castigate him in front of the jury. Spears assured the Court that he was satisfied with Elsey's representation and wanted to continue with the trial despite the "personalities clashing" and "the impact it has on the jury." Tr. 9/15/99, p. 24. Before dismissing the jury for the day, Judge Enslen then, in their presence, apologized to Elsey insofar as he had "been on edge with him." *Id.*, p. 30.

When trial resumed on Friday, September 17, 1999, an additional speaker had been placed on defendant Spears' table and "real time" transcription service was provided. Spears was able to read all words spoken in the courtroom on a computer monitor at his table. Proofs were received without major incident on this date and on Monday, September 20th—although the testimony was interrupted by numerous objections which protracted proceedings.

On September 21st, the tension between Judge Enslen and Elsey deepened. Judge Enslen, after sustaining several objections by the government and admonishing Elsey about persistent improper questions and inappropriate comments on the testimony, called a recess to further instruct Elsey. When it became apparent the defense would be precluded from introducing a purportedly critical documentary exhibit for failure to comply with a pretrial discovery order, Judge Enslen again expressed concern about the adequacy of Spears' representation. Shortly after the jury returned, Elsey attempted to elicit testimony relating to the very exhibit which had just been disallowed. When Judge Enslen reminded Elsey of the Court's ruling, Elsey argued the point. Judge Enslen clarified the ruling. Elsey resumed with the same line of questioning, waving the prohibited exhibit in front of the witness and jury. Exasperated by Elsey's contumacy, Judge Enslen admonished him and then abruptly called another recess and dismissed the jury early.

After a lengthy, frustrating exchange between Judge Enslen and Elsey on the record, Judge Enslen again asked Spears about his satisfaction with Elsey's performance. Judge Enslen advised Spears that he did not think Elsey had represented him competently and that he would declare a mistrial if Spears requested it. Tr. 9/21/99, pp. 169–70. Spears acknowledged he was ill-equipped to judge Elsey's competence. Nonetheless, he declined to request a mistrial, because he knew of no other attorney to turn to and because he could not "afford a mistrial." Tr. 9/21/99, p. 170. Elsey and Assistant United States Attorney Julie Woods also declined to request a mistrial.

The situation had taken a further turn for the worse when trial was resumed the following morning. In the afternoon of September 21st, after trial had been concluded for the day, Judge Enslen's secretary received a telephone call from a juror. The juror, Ms. Adams, reported having overheard a comment by Elsey as she was exiting the courtroom to the effect that "he was going to have the case transferred." Tr. 9/22/99, p. 3, Perturbed that Elsey's carelessness necessitated yet another disruption of the trial, Judge Enslen began the day on September 22nd questioning Ms. Adams and all the other jurors in chambers on the nature of the comment overheard and whether it or anything else had compromised their impartiality. Elsey had approached the court reporter as the jury was filing out and requested a transcript, but Juror Adams and other jurors understood Elsey as having expressed a need to have the case transferred.

All of the jurors said they remained impartial and unbiased, although several expressed frustration about the slowness of progress in the case. One juror was annoyed by Elsey, but felt sorry for him. Another, Juror Andrus, said she had "a 17–year old that is more compliant then Elsey." Tr. 9/22/99, p. 52. She had come to believe Elsey's noncompliance with the Court's instructions reflected game-play-

ing. One juror characterized the continual recesses as distracting and said he tended to blame the defense lawyer for them.

The voir dire examination of the jurors was followed by a lengthy, rather unpleasant exchange between Judge Enslen and Elsey, each criticizing the other. Judge Enslen then attempted to solicit a motion for a mistrial. After conferring with his client, Elsey declined to move for a mistrial based on denial of a fair trial. Instead, he moved for a mistrial based on prosecutorial misconduct. The prosecutorial misconduct was said to consist of the government's failure to timely disclose certain materials it intended to use at trial. At the conclusion of the argument, Judge Enslen inquired of Spears whether he understood the ramifications of his attorney's motion for a mistrial. Spears responded that he did not want a mistrial; whereupon Elsey promptly attempted to withdraw the motion. Tr. 9/22/99, p. 112. Spears said he was uncertain about whether he had received a fair trial to date, but wanted to go forward and get it over with. *Id.*, at 113.

After a one-hour recess, the Court denied defendant's counsel's motion for a mistrial as frivolous. Judge Enslen went on to find, however, that Elsey's conduct had created manifest necessity for the declaration of a mistrial. Judge Enslen concluded Elsey's representation of Spears was so deficient as to deny him effective assistance of counsel, resulting in juror bias against Spears. *Id.*, pp. 113–123.

In support of his ruling, Judge Enslen cited Elsey's apparent ignorance of and persistent refusals to abide by the Federal Rules of Evidence, the local rules and the fundamental requirements of courtroom decorum. He decried Elsey's custom of interrupting and arguing with witnesses over unfavorable testimony and with the Court over unfavorable rulings, describing him as a "loud, angry, red-faced person who has intimidated the jury and some witnesses." Tr. 9/22/99, p. 114. He characterized Elsey as "the worst lawyer I've even seen," who was completely unpre-

pared and unable to articulate and present a cogent defense on behalf of his client. *Id.* at 118.

Most importantly, Judge Enslen determined Elsey's performance had resulted in juror bias against Spears. This conclusion was based in part upon the jurors' answers to Judge Enslen's voir dire inquiries on September 22nd. Although the jurors generally believed they remained impartial, Judge Enslen noted that several expressed frustration about Elsey's conduct and about delays, which they tended to attribute to Elsey. The assessment of juror bias was also based in part on Judge Enslen's observations of the jurors' reactions to Elsey—"raising their eyes, shaking their heads negatively"—indicating "they are more offended by his behavior than I am." Tr. 9/22/99, p. 120. Judge Enslen also sensed that jurors had perceived Elsey's approach toward the court reporter on September 21st as threatening and overbearing—a perception confirmed by the protective reactions of the Marshal deputy and court security officer who were present in the courtroom.

Further, during the recess immediately prior to his ruling, Judge Enslen had been informed by two of the 14 empaneled jurors that they had made vacation plans and would not be available to continue with the trial beyond Thursday, September 23rd. When the jury was selected on September 13th and the trial was expected to last three days, these vacation plans had not posed a problem. Yet, delays attendant to defendant's late disclosed hearing impairment and Elsey's courtroom antics had needlessly prolonged the trial. The trial could feasiblely continue with just twelve jurors, Judge Enslen observed, but for his conclusion that Juror Andrus should be disqualified because she was "so agitated at Mr. Elsey that she would not be a fair juror for Mr. Spears." Tr. 9/22/99, p. 115.

Finally, Judge Enslen recalled regretfully that two days of trial proceedings had been completed before defendant's hearing

impairment had been disclosed. Thus, although remedial measures were promptly implemented to ensure defendant's full participation in subsequent proceedings, Judge Enslen noted that the integrity of the proceedings had, to the extent Spears had been unable to hear anything during the first two days, been irreversibly compromised.

Considering the totality of these circumstances, Judge Enslen was reluctantly compelled to declare a mistrial, observing that "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

### III

#### A. Assessment of Bias

■ Defendant contends Judge Enslen abused his discretion in declaring a mistrial. In support, he relies primarily on two recent Sixth Circuit decisions. First, in *Harpster v. State of Ohio*, 128 F.3d 322 (6th Cir.1997), the Sixth Circuit affirmed the district court's award of habeas corpus relief prohibiting a second trial after declaration of a mistrial. The state trial court had declared a mistrial based on defense counsel's violation of a pretrial order prohibiting evidence that defendant faced life imprisonment if convicted. The violation consisted of defense counsel's inquiring of a detective whether the mandatory nature of the penalty for the charged offense precluded probation. Even before an answer could be given, the prosecution objected and moved for a mistrial, which was granted. In concluding that manifest necessity had not been shown, the Sixth Circuit held (1) that it was not even clear that defense counsel had violated the pretrial order; (2) that any prejudice was "minuscule;" and (3) that any potential juror bias would have been remedied by a simple corrective instruction. *Id.* at 330.

The instant case is clearly distinguishable from *Harpster*. Here, defense counsel's misconduct consisted of much more than a single arguably improper question. Elsey's misconduct, as detailed above, was varied in nature and pervaded some seven days of trial. The potential juror bias arising from the cumulative effects of Elsey's misconduct was, therefore, not so easily isolated and remedied through a simple corrective instruction. And although it is impossible to ascertain the extent of actual or potential juror bias engendered by Elsey's performance, it can no way be deemed "minuscule." The record clearly demonstrates his conduct was disruptive, distracting and frustrating both to Judge Enslen and the jury.

Moreover, as observed in *Harpster*, Judge Enslen's assessment of juror bias "is entitled to special respect." *Id.* at 328. There are compelling institutional reasons for this deference:

He [the trial judge] has seen and heard the jurors during their *voir dire* examination. He is the judge most familiar with the evidence and the background of the case on trial. He has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he is far more "conversant with the factors relevant to the determination" than any reviewing court can possibly be.

*Arizona v. Washington*, 434 U.S. at 513, 98 S.Ct. 824, quoting *Wade v. Hunter*, 336 U.S. at 687, 69 S.Ct. 834.

Indeed, these reasons are especially compelling in this case, where the bias assessment is based not solely on the introduction of improper argument, testimony or evidence, but upon Judge Enslen's observations of Elsey's demeanor and the jurors' reactions to him throughout the trial. This Court did not conduct a voir dire examination of the jurors, did not observe Elsey's intimidating and obstreperous conduct, did not observe the jurors' reactions, and is hardly in a position to assess the level of frustration experienced by the jurors or the extent to which defen-

dant's right to effective representation and a fair trial had been compromised.

For these reasons, the Court's review of Judge Enslen's exercise of discretion is justifiably limited. As the Supreme Court observed in *Washington*, "[t]he interest in orderly, impartial procedure would be impaired if [the trial judge] were deterred from exercising [the power to declare a mistrial] by a concern that any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred." 434 U.S. at 513, 98 S.Ct. 824.

Defendant urges the Court to put this deference aside and recognize that the tensions in the courtroom were not caused exclusively by his attorney. The tensions and disruptions, he argues, were the product of a personality conflict between Judge Enslen and Esley, and, in any event, did not amount to manifest necessity for a mistrial.

■ A fair-minded reading of the record does not support the argument. Granted, some of the exchanges between Judge Enslen and Elsey appear to have been heated and marked by a lack of professional decorum. Yet, if Judge Enslen's participation in these exchanges is to be faulted, it would be for his lack of swiftness and firmness in restraining Elsey. Moreover, even if Judge Enslen's reactions to Elsey were deemed to have contributed to the potential jury bias against defendant or to the sense that the trial had become unfair, this would not undermine the propriety of the declaration of a mistrial. The fact that potential jury bias may stem both from a defendant's misconduct and the trial judge's reaction to it does not render the declaration of a mistrial any less manifestly necessary. *United States v. Gantley*, 172 F.3d 422, 431 (6th Cir.1999).

■ Defendant insists manifest necessity is lacking because the record does not reflect *actual* juror bias. Indeed, when Judge Enslen made inquiry of the jurors, each professed a continuing ability to impartially evaluate the evidence. However, the reasonableness of Judge Enslen's deci-

sion is not dependent upon a showing of actual bias. The manifest necessity determination must be upheld if there is a sound basis in the record for his conclusion that the jurors might have been influenced by improper considerations. See *Washington*, 434 U.S. at 511–12, 98 S.Ct. 824 (absent showing of actual bias, mistrial justified by possibility of bias); *United States v. Sisk*, 629 F.2d 1174, 1180 (6th Cir.1980) (despite jurors' expressed confidence in ability to weigh evidence fairly, mistrial justified by possibility of outside influence).

Having thoroughly reviewed the trial record, the Court finds it provides sound and ample support for Judge Enslen's determination of potential juror bias.

**B. Consideration of Alternatives**

■ Similarly unpersuasive is defendant's reliance on *Johnson v. Karnes*, 198 F.3d 589 (6th Cir.1999). Citing *Johnson*, defendant contends Judge Enslen cannot be found to have exercised sound discretion because he failed to consider alternatives to declaring a mistrial. In *Johnson*, the trial judge declared a mistrial after a single improper question by defense counsel. The prosecuting attorney objected to the question and the trial judge called a brief recess. Upon reconvening, the prosecuting attorney moved for a mistrial, arguing simply that it was impossible to "unring that bell." 198 F.3d at 592. Without considering any alternatives and without even hearing arguments on manifest necessity, the court declared a mistrial, holding the question was impermissible and the situation could not be cured.

The Sixth Circuit held the trial judge failed to exercise sound discretion because (1) the mere asking of one improper question did not, under the circumstances, create such a risk of jury bias as to constitute manifest necessity; (2) the trial judge did not engage in "careful consideration and solicitude for the serious consequences attendant upon mistrials;" and (3) the trial

judge did not consider less drastic alternatives. *Id.* at 596.

This Court concurs entirely in the *Johnson* analysis. Its application to the instant facts, however, clearly yields a different result. First of all, as detailed above, Judge Enslen was faced with a much stronger likelihood of juror bias.

Second, Judge Enslen was cognizant of the consequences of declaring a mistrial. He made his decision deliberately and reluctantly only after the potentially prejudicial effects of numerous errors and irregularities had mounted to an intolerable level. The appropriateness of a mistrial had been seriously considered on three occasions during the trial. Judge Enslen gave Elsey, Spears and counsel for the government opportunities to comment on the appropriateness of a mistrial. His solicitude for the gravity of the decision is further reflected in the care with which he explained his reasoning, his ruling occupying eleven pages of the transcript. See *Johnson,* 198 F.3d at 595 (trial court's exercise of discretion stands on firmer ground when record reflects analytic process leading to decision to declare mistrial).

Third, Judge Enslen considered and employed alternatives to a mistrial on several occasions throughout the trial proceedings. The *Johnson* court identified several mechanisms which should be considered before declaring a mistrial: granting a recess or continuance, threatening or imposing contempt sanctions, and giving corrective jury instructions. *Id.* at 595–96. Judge Enslen declared numerous unscheduled recesses for the purpose of admonishing and instructing Elsey. Mid-trial, he granted a two-day continuance to allow defendant Spears to make satisfactory arrangements to accommodate his hearing impairment. On more than one occasion, Judge Enslen, in response to misconduct by Elsey, gave the jury cautionary instructions. When potential juror bias became evident, Judge Enslen considered disqualifying a juror, but refrained when it became apparent that two other jurors would

not be available to complete the trial anyway.

Judge Enslen did not act "precipitately," but, acted deliberately and responsibly and employed several less drastic remedial measures before declaring a mistrial. He thus acted in a manner similar to other trial judges who have been found to have exercised sound discretion. *Id.* at 596. See also *Washington,* 434 U.S. at 512–16, 98 S.Ct. 824 (where trial judge acted responsibly and deliberately and exercised sound discretion in handling sensitive juror bias problem, manifest necessity deemed sufficiently established even though mistrial was not strictly necessary).

 Defendant insists Judge Enslen's failure to explore all alternatives is evident in his failure to even once hold Elsey, or threaten to hold him, in contempt of court. Yet, though Judge Enslen never actually threatened Elsey with contempt, the record is replete with admonishments and chastisements. Judge Enslen made numerous efforts to bring Elsey's conduct into conformity with the customary rules of evidence, procedure, civility and decorum. Further, his mere failure to invoke the Court's contempt power does not undermine the soundness of his decision. It is well-settled that the manifest necessity determination is not to be made in a mechanical fashion, but is to be based on consideration of the totality of the circumstances in each given case. *Gantley,* 172 F.3d at 429; *Glover v. McMackin,* 950 F.2d 1236, 1240 (6th Cir.1991). While Judge Enslen did not invoke the court's contempt power, he employed several other measures in attempts to preserve the integrity of the trial before finally concluding the situation had so deteriorated in several respects that a mistrial was necessary. Judge Enslen's handling of the situation was thus entirely consistent with the teaching of *Johnson v. Karnes.*

## IV

For all the foregoing reasons, the Court concludes Judge Enslen exercised sound

discretion in declaring a mistrial based on manifest necessity. The circumstances justifying the ruling resulted predominantly from conduct by defendant's counsel. Defendant Spears professed satisfaction with Elsey's representation and declined to move for a mistrial on account of any errors Elsey made. Yet, Spears admitted he was ill-equipped to judge Elsey's competence and insisted on continuing with the trial mainly because he could not afford to prolong the proceedings. Judge Enslen, who was in a much better position to judge Elsey's competence and effectiveness, was outspoken in his criticism. From early on in the trial, he was concerned that defendant's right to a fair trial was being compromised by Elsey's performance. Thus, although Judge Enslen was clearly cognizant of defendant's "valued right to have his trial completed by a particular tribunal," see *Washington*, 434 U.S. at 503, 98 S.Ct. 824, he refused to ignore his duty to take affirmative action to stop professional misconduct and protect the integrity of the trial. *Id.* at 513, 98 S.Ct. 824. He reasonably concluded, based on the cumulative effects of Elsey's conduct, that there was a likelihood of juror bias against defendant Spears. Recognizing that no party has "a right to have his case decided by a jury which may be tainted by bias," he rightly held "the public's interest in fair trials designed to end in just judgments" weighed in favor of finding manifest necessity for a mistrial. *Id.* at 516, 98 S.Ct. 824. Accordingly, defendant's motion to dismiss the indictment on double jeopardy grounds will be denied.

## V

Finally, in the event the Court reached this result, defendant has asked the Court to certify the denial of his motion to dismiss as immediately appealable. Indeed, it is now well-settled that the denial of a motion to dismiss on double jeopardy grounds is a "final decision" subject to immediate appeal. *Abney v. United States*, 431 U.S. 651, 662, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Gantley*, 172 F.3d at 427. This is true as a matter of law,

independent of any certification by this Court.

An order consistent with this opinion shall issue forthwith.

## ORDER DENYING MOTION TO DISMISS

In accordance with the Court's written opinion of even date,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss the indictment on double jeopardy grounds is **DENIED.**